UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE RAMIREZ, | ) |
|     Petitioner, | ) ) ) |
| v. | )    Civil Action No. 03-40281-NMG |
| STEVEN J. O'BRIEN, | ) ) ) |
|     Respondent. | ) ) |

**RESPONDENT'S REPLY BRIEF
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS**

The respondent, Steven J. O'Brien, respectfully submits this memorandum in response to Ramirez's opposition to the respondent's motion to dismiss.[1] As set forth below, Ramirez did not met the heavy burden of proving that Ground One is exhausted. Nor has Ramirez demonstrated that this case should be stayed.

**I.    Ramirez Tendered Ground One to the SJC Purely as a State Evidentiary Objection.**

Ground One of Ramirez's petition alleges that the admission of certain business cards and a health club receipt violated his "Sixth Amendment right to confront the witnesses against him." [Petition at ¶ 12A]. In his ALOFAR, Ramirez's hearsay appeal was divided into three sections. In the first two sections (Sections I.A and I.B), Ramirez contended that the disputed evidence was inadmissible hearsay. [Resp. Mem., Exh. A at 6-10]. In the third portion (Section I.C), Ramirez argued that Massachusetts Appeals Court erred when it upheld the admissions. [Id. at 10-12].

---

[1] To avoid unnecessary duplication, this reply brief utilizes the same defined terms (e.g., "Ramirez") and abbreviations (e.g., "ALOFAR") that were used in the Respondent's Memorandum of Law In Support of Motion to Dismiss ("Resp. Mem.").

In his opposition brief, Ramirez concedes that he did not raise a Confrontation Clause claim in those portions of his ALOFAR contending that the business cards and health club receipt were inadmissible hearsay. [See Ramirez Opp. at 2-4]. Rather, Ramirez claims that he alerted the SJC to his alleged Confrontation claim by arguing that admission of the "hearsay" evidence was "not harmless beyond a reasonable doubt." [Id.] Ramirez further contends that the "harmless error" section of his ALOFAR also referred to the Sixth Amendment and cited a federal constitutional decision, Schneble v. Florida, 405 U.S. 427 (1982). [Ramirez Opp. at 2-3].

First, the harmless error test could not alert the SJC to a constitutional claim because such tests are applied to both constitutional and non-constitutional trial errors. See, e.g., Commonwealth v. Esteves, 429 Mass. 636, 710 N.E.2d 963 (1999); Commonwealth v. Seminara, 20 Mass. App. Ct. 789, 796-98, 483 N.E.2d 92, 96 (1985) ("[H]armless error beyond a reasonable doubt is a useful and practical concept," not a constitutional one); United States v. Vigneau, 187 F.3d 70, 76-78 (1st Cir. 1999) (applying harmless error beyond all doubt to hearsay evidence that was admitted in violation of Federal Rules of Evidence); United States v. Patrick, 959 F.2d 991, 1002 (D.C. Cir. 1992) (applying harmless error test in accordance with Fed. R. Crim. P. 52(a); no mention of United States Constitution, Sixth Amendment or other constitutional rights). See also Dougan v. Ponte, 727 F.2d 199, 201 (1st Cir. 1984) (referring to "harmless error" test as "non-constitutional").

Dougan is directly on point. The petitioner in that case claimed that his references to the denial of a "fair trial" should have alerted the state court to a federal due process claim. 727 F.2d

at 200. The First Circuit rejected the petitioner's argument because

> the concept of "unfairness" embraces a continuum, ranging from relatively minor departures from required conduct to breaches of the most basic requisites of a fair trial.

Id. at 201. Consequently, the use of an "opaque label" such as "fair trial" could not "alert the [state] court to any lurking federal constitutional question." Id.

As set forth above, a "harmless error" test can be used in both constitutional and non-constitutional settings. Consequently, Ramirez's discussion of a "harmless error" test could not have alerted the state court to Ramirez's alleged constitutional claim.[2] Id.

Ramirez's "harmless error" contention fails for a second reason. Although Ramirez did mention "harmless error" in his argument, he actually applied a "prejudicial error" analysis to his evidentiary objections. Specifically, Ramirez argued that when the Massachusetts Appeals Court reviewed the admission of the business cards and health club receipt, the court failed to properly apply Massachusetts law on "prejudicial error." [Exh. A at 11]. Ramirez then quoted the "prejudicial error" standard from Esteves, a state case decided solely on state-law grounds using Massachusetts common law. [Id.] See also Esteves, 429 Mass. at 638-40, 710 N.E.2d at 965-66. Indeed, the SJC in Esteves explicitly stated that it was *not* reaching any constitutional issues. Id. at 639 n.4, 710 N.E.2d at 965 n.4.

Moreover, after quoting the "prejudicial error" standard from Esteves in his ALOFAR, Ramirez then analogized his case to Esteves and concluded by re-quoting a portion of Esteves's "prejudicial error" test. [Id. at 11-12]. Consequently, even if "harmless error" were a purely

---

[2] Furthermore, because "harmless error" is not a constitutional right (but a test applied once a trial error is found), citing a "harmless error" test does nothing to advise a state court of the constitutional right allegedly being invoked.

3

constitutional concept (*which it is not*), Ramirez's use of the "prejudicial error" standard plainly told the SJC that this was a state-law claim. Stated differently, Ramirez's limited references to a "harmless error" standard – followed by a "prejudicial error" analysis – could not have alerted the SJC to an alleged Confrontation claim. See, e.g., Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987); Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988) ("[o]blique references which hint that a theory may be lurking in the woodwork" insufficient to satisfy the exhaustion requirement).

Ramirez's other argument – that he cited to the Constitution and Schneble – similarly fails. First, both citations appeared in a string cite without any explanation or discussion:

> Commonwealth v. Seminara, 20 Mass. App. Ct. 789, 796-798 (1985); Schneble v. Florida, 405 U.S. 427, 432 (1982); U.S. Const., am. 6, 14; Mass. Decl. of Rts., art. 12.

[See Resp. Mem., Exh. A at 10]. The First Circuit repeatedly has held that passing references to the Constitution or federal case law are insufficient to meet the exhaustion requirement. In Gagne, for example, the First Circuit rejected an argument virtually identical to the one Ramirez propounds here:

> The portion of the briefs dealing with prosecutorial misconduct contained only one oblique reference to constitutional rights. In the issue caption, the defendant alleged that he had been denied his "rights to a fair trial and due process of the law." The only other arguable reference was a repetition of the words "fair trial" within the body of the argument.. . . . [W]e have no difficulty ruling that Gagne did not alert the Commonwealth courts to the federal nature of his claim.

835 F.2d at 7, 8. In Dougan, the First Circuit similarly made it clear that it is not enough to sprinkle a state-law argument with federal cases:

> Where a habeas corpus petitioner's only basis for contending that he has exhausted state remedies is the citation of state or federal authorities employing constitutional analysis **such authorities must play a prominent**

4

**part in his state court argument.**

Dougan, 727 F.2d at 198 (emphasis added). Here, of course, Schneble played no substantive role in Ramirez's argument to the SJC. Instead, it appeared in a string citation, without any developed discussion or analysis. [Resp. Mem., Exh. A at 9]. Simply stated, Ramirez's present reliance on Schneble and "U.S. Const., am. 6, 14" is misplaced. Id. See also Fortini v. Murphy, 257 F.3d 39, 44 (2001) (passing references to constitutional violation do not satisfy exhaustion doctrine); Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. 1989) ("There is more to a petitioner's burden than simply citing a federal case or two"); Gagne, 835 F.2d at 7 (no fair presentment where petitioner merely cited federal case and "fair trial" without any federal analysis); Martens, 836 F.2d at 717 (defendant must do more than make a "passing reference or two" to a federal question).

In sum, habeas petitioners are required to present their constitutional claims "face-up and squarely; **the federal question must be plainly defined.**" Martens, 836 F.2d at 717 (emphasis added). In this case, when Ramirez challenged the admission of the business cards and health club receipt, he never alleged that their admission violated the Confrontation Clause (or any other part of the Constitution). [See Resp. Mem., Exh. A at 6-9]. That is, those portions of his ALOFAR which argued that the business cards and health club receipt were inadmissible hearsay *have no constitutional element whatsoever.* [Id.] Rather, as part of his argument that the admissions warranted reversal, Ramirez (1) remarked that the errors were not harmless beyond a reasonable doubt; and (2) included "U.S. Const., am. 6, 14" and Schneble in a string citation. As set forth above, the "harmless error" test is not a constitutional precept; moreover, the isolated references to the Constitution and Schneble did nothing to present a Confrontation claim to the

5

SJC. Ground One therefore is unexhausted. See, e.g., Martens, 836 F.2d at 717 ("[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record"); Nadworny, 872 F.2d at 1101 ("[A]n isolated federal-law bloom in a garden thick with state-law references" will not suffice).

## II.     Ramirez Is Not Entitled to a Stay.

In the alternative, Ramirez asks this Court to stay his habeas petition so he can return to state court to exhaust Ground One. Both the Supreme Court and the First Circuit have indicated that stays *may be* permissible in certain circumstances.[3] Neither court, however, has ever ruled that habeas petitions may be stayed whenever the petitioner presents an unexhausted claim. To the contrary, the First Circuit has stated that in the habeas context, a stay is a "narrow safety valve" only to be used "in instances of clear injustice." Brackett v. United States, 270 F.3d 60, 67 (1st Cir. 2001), cert. denied, 535 U.S. 1003 (2002). The First Circuit has further indicated that, in order to obtain a stay, the petitioner must show that the claims in the habeas petition are "meritorious." See Neverson v. Bisonnette, 261 F.3d 120, 126 n.3 (1st Cir. 2001) (suggesting that it may be appropriate to stay a "meritorious" habeas petition). Federal courts across the country similarly have required the petitioner to demonstrate exceptional and extraordinary circumstances before staying an unexhausted petition. See, e.g., Akins v. Kenney, 341 F.3d 681, 686 (8th Cir.2003) ("truly exceptional circumstances" required); Hill v. Mitchell, 30 F. Supp.2d 997, 1000 (S.D. Ohio 1998) ("undue hardship or inequity"); Williams v. Dretke, 2004 WL 238058, *4 (N.D.

---

[3] The respondent maintains that the use of a stay is inconsistent with the strict time limits established by AEDPA's statute of limitations, see 28 U.S.C. § 2244(d), and with the interests of finality that underlie the entire statutory scheme. See Duncan v. Walker, 533 U.S. 167, 178-79 (2001).

Tex., Feb. 9, 2004) ("there must be exceptional or unusual circumstances"); Williams v. Vaughn, 3 F. Supp.2d 567, 576 (E.D. Pa. 1998) (same); Parker v. Johnson, 988 F. Supp. 1474, 1476 (N.D. Ga. 1998) (same).

In this case, Ramirez has not shown that dismissal would result in a "clear injustice" or that his claims have any merit. Rather, Ramirez merely contends that he should get a stay. [See Ramirez Opp. at 4-5]. That hardly meets the standards of Brackett or Neverson. Nor does it satisfy the "truly exceptional circumstances" requirement adopted in other circuits.

Furthermore, staying a habeas petition simply because it is unexhausted – *i.e.*, without requiring the petitioner to make a heightened showing – runs contrary to the principles behind the exhaustion doctrine. It is not the province of a federal habeas court to ensure that a petitioner can obtain federal review of any or all of his claims. See, e.g., Healy v. DiPaola, 981 F. Supp. 705, 708 (D. Mass. 1997) ("AEDPA does not require a court to hold a habeas corpus petition in abeyance pending the exhaustion of new claims in state court"). See also David v. Hall, 318 F.3d 343, 346 (1st Cir.) ("AEDPA reflects Congress' view that the courts were being too generous with habeas relief and that the whole system needed to be tightened up"), cert. denied, __ U.S. __, 124 S. Ct. 66 (2003).

Rather, it is the petitioner's burden to satisfy the longstanding requirement of fully exhausting his state court remedies as to all his claims before entering the federal habeas court. See Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (a habeas petitioner "bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim"). This reflects the Supreme Court's view that, in the interests of comity and federalism, habeas litigants must be required "*first* to exhaust all state remedies and

7

*then* to file their federal habeas petitions...." Duncan, 533 U.S. at 179 (emphasis original). See also Rose v. Lundy, 455 U.S. 509, 518-519 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error"). The exhaustion doctrine – including the requirement that courts dismiss unexhausted petitions – also is meant to avoid piecemeal litigation, delays and judicial inefficiencies. See, e.g., Duncan, 533 U.S. at 179-80; Harris v. Reed, 489 U.S. 255, 269 (1989) (the exhaustion rule "furthers the interest in the efficiency of [the] federal habeas corpus" courts).

If this Court were to stay unexhausted petitions as a matter of course, prisoners would have little incentive to exhaust their claims in state court first. To the contrary, a prisoner who has failed to raise a claim on direct review has no reason to bring a collateral attack in state court. Rather, he might as well bring a federal habeas petition in hopes that the federal court will hear his unexhausted claim; if the claim is deemed unexhausted, the prisoner knows he can get a stay and *then* return to state court. That is, routinely staying unexhausted petitions

> would ... create more opportunities for delay and piecemeal litigation without advancing the goals of comity and federalism that the exhaustion requirement serves. We do not believe that Congress designed the [AEDPA] statute in this manner.

Duncan, 533 U.S. at 180 ("A diminution of statutory incentives to proceed first in state court would also increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce"). On the other hand, requiring petitioners to make a heightened showing of merit and clear injustice before issuing a stay "provides a powerful incentive for litigants to exhaust all available state remedies before proceeding in the lower federal courts." Id.

8

In addition to violating the important public policy interests underlying the exhaustion doctrine, a stay of these proceedings also would thwart AEDPA's statute of limitations. The purpose of the one-year limitation period is to promote finality, curb undue delays, and reduce abuses of the writ. See David, 318 F.3d at 346; Delaney v. Matesanz, 264 F.3d 7, 10 (1st Cir. 2001) (AEDPA passed "in part to combat increasingly pervasive abuses of the federal courts' habeas jurisdiction"); Sperling v. White, 30 F. Supp.2d 1246, 1251, 1253 (C.D. Cal. 1998) (noting remarks by sponsor Sen. Orrin Hatch to the effect that the "Act's purpose was to set strict time limits in habeas cases, reduce delay, and ensure finality"). As the First Circuit has stated in the context of equitable tolling:

> One of AEDPA's main purposes was to compel habeas petitions to be filed promptly after conviction and direct review, to limit their number, and to permit delayed or second petitions only in fairly narrow and explicitly defined circumstances.... **To bypass these restrictions for reasons other than those given in the statute could be defended, if at all, only for the most exigent reasons.**

David, 318 F.3d at 346 (emphasis added).

Issuing a stay simply because a claim is unexhausted would subvert these important goals. As previously discussed, an "automatic stay" rule would encourages prisoners to "bounce back and forth" between federal and state court, thus creating judicial inefficiencies at both the state and federal level, as well as delaying the final resolution of the prisoner's conviction. See, e.g., Duncan, 533 U.S. at 180 (AEDPA's limitations period is intended to promote finality in convictions and to avoid "delay in the adjudication of federal law claims"); Williams, 2004 WL 238058 at *4 (if court stayed an unexhausted habeas petition, "the federal court would ... have to hold the case in abeyance indefinitely with no control of or knowledge about the progress of

9

collateral state court proceedings"); Parker, 988 F. Supp. at 1477 ("[the petitioner] has not yet begun the long process of seeking state review on his many unexhausted claims, and it would clearly thwart Congress' intent to expedite the federal habeas review process if the Court were to hold the entirety of [the] petition in abeyance until completion of state review").[4]

In short, limiting stays to "meritorious petitions" involving cases of "clear injustice" or "exceptional circumstances" would encourage petitioners to properly exhaust their state-court remedies before coming to federal court. See, e.g., Cowans v. Artuz, 14 F. Supp.2d 503, 507-08 (S.D.N.Y. 1998). It would also prevent the inefficiencies, delays and abuses that AEDPA was meant to address. See, e.g., Duncan, 533 U.S. at 180; David, 318 F.3d at 346. The other option – granting a stay solely because it is unexhausted – would thwart the purposes of the exhaustion doctrine, subvert the statute of limitations and be contrary to the purposes of AEDPA. See, e.g., Williams v. Taylor, 529 U.S. 362, 436 (2000) (AEDPA's purpose is to further the principles of finality, comity and federalism); Cowans, 14 F. Supp.2d at 507-08 (holding unexhausted petition in abeyance would encourage state habeas petitioners to try to circumvent the federal statute of limitations by filing their federal habeas know they have not exhausted their claims in state court).

---

[4] Take this case as an example. The SJC denied Ramirez's ALOFAR in September 2002. Since Ramirez apparently believed he had a Confrontation claim at that time, he could have brought it in state court then, via a motion for new trial. Instead, however, Ramirez filed this habeas petition. If the Court were to grant a stay now – in May 2004 – Ramirez would merely do what he should have done years ago, i.e., file a motion for new trial. Thus, by failing to properly exhaust his state remedies, Ramirez has delayed the resolution of his case by at least two years. Moreover, while Ramirez is back in state court, this petition will remain pending in federal court. At a minimum, this causes unnecessary monitoring costs and inefficiencies for both the Court and the Commonwealth. See, e.g., Sterling v. Scott, 57 F.3d 451, 454 (5th Cir. 1995) (federal courts should not be used as "jurisdictional parking lots"), cert. denied, 516 U.S. 1050 (1996). At worst, if Ramirez were successful in state court, he would have brought this lawsuit for no reason.

Finally, the expiration of AEDPA's statute of limitations is not a "meritorious," claim, does not present a "clear injustice" and does not constitute a "truly exceptional circumstance." Rather, it is a problem of the prisoner's own making because he chose to bring a habeas petition rather than to seek post-conviction relief in state court. See, e.g., Rockwell v. Yukins, 217 F.3d 421, 424 (6th Cir. 2000) ("Having knowingly added an unexhausted claim to his petition, [the petitioner] cannot lay the blame at the feet of the district court"); Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (habeas petitioners who delay filing for state post-conviction relief "should be held responsible for their failure to fulfill the long-standing requirement that they exhaust state remedies"), cert. denied, 538 U.S. 949 (2003). In this case, for example, Ramirez (who was represented by counsel at all stages of his state and federal proceedings) could have avoided the present situation by filing a motion for new trial in state court after his conviction was affirmed. Had he done so, he would have tolled AEDPA's statute of limitations. He chose not to do so, however, but filed this habeas petition instead. Even if Ramirez's decision could be deemed "mistaken" or "negligent," it cannot be called exceptional or extraordinary. Cf. David, 318 F.3d at 346 (in equitable tolling context, a misunderstanding of the law is not an "extraordinary circumstance[]"); Lattimore v. Dubois, 311 F.3d 46, 54-55 (1st Cir. 2002) ("Wrong guesses, even reasonable ones," as to how a statute operates do not constitute extraordinary circumstances), cert. denied, 538 U.S. 966 (2003). Indeed, if the courts found exceptional circumstances or a clear injustice whenever the statute of limitations was at risk, the "exception would easily swallow the rule." Sustache-Rivera v. United States, 221 F.3d 8, 12 (1st Cir. 2000), cert. denied, 532 U.S. 924 (2001).

Because Ramirez has made no showing of merit, exceptional circumstances or clear injustice, his request for a stay must be denied. Id.

## Conclusion

For the foregoing reasons, and for the reasons stated in the Memorandum of Law in Support of Respondent's Motion to Dismiss, the respondent respectfully requests that the Court dismiss Ramirez's petition for a writ of habeas corpus. In addition, for the foregoing reasons, this Court should deny Ramirez's request for a stay.

Dated: May 5, 2004

Respectfully submitted,

THOMAS F. REILLY,
ATTORNEY GENERAL

Natalie S. Monroe (BBO# 562383)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2833

### Certificate of Service

I hereby certify that on May 5, 2004, I caused a copy of the above document to be served by first-class mail, postage prepaid, upon counsel for the petitioner, Alan D. Campbell, Esq., P.O. Box 131, Brookline, Massachusetts 02446.

Natalie S. Monroe